UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN ALLEN BASS,<br><br>                         Plaintiff,<br><br>           vs.<br><br><br>GEORGE NEOTTI, Warden, et al.,<br><br>                         Defendant. | CASE NO. 09cv1850-MMA(CAB)<br><br>**ORDER RE: DEFENDANTS'<br>MOTION TO DISMISS PLAINTIFF'S<br>COMPLAINT**<br><br>[Doc. No. 23] |

Plaintiff Brian Allen Bass, a California state prisoner proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 against various defendants, alleging three causes of actions arising out of violations of his First and Eighth Amendment rights. Defendants move to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a plausible claim for relief. Plaintiff filed an opposition to the motion, to which Defendants replied. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

### BACKGROUND

Plaintiff is an inmate committed to the custody of the California Department of Corrections, and is currently housed at California State Prison in Vacaville, California. Plaintiff complains of events which allegedly occurred while he was incarcerated at R. J. Donovan Correctional Facility, in

San Diego County, California.[1]

According to Plaintiff, on October 15, 2008, six correctional officers, including defendants Vanderweide, Marshall, Vasquez, McCurty, Montoya, and Thiefe (the "officer defendants" hereinafter) put Plaintiff "on the wall" because he called C.O. Marshall a name. Plaintiff asserts that C.O. Marshall called the "yard crew" and told them that he threatened her, which Plaintiff claims he did not do. *Complaint*, 4. Plaintiff alleges that after being placed against the wall, the officers asked him why he had threatened C.O. Marshall and then C.O. Vanderweide hit him in the testicles three times, while the other officers allowed it to happen and watched. After being hit by C.O. Vanderweide, Plaintiff alleges that all six officers beat him with batons and their fists, driving him to the ground. Once on the ground, Plaintiff claims that C.O. Marshall and C.O. Montoya hit him with batons on his legs, buttocks, and body, repeatedly, while the other officers hit him with their fists. Plaintiff asserts that Warden Neotti and Director Cate (the "supervisor defendants" hereinafter) allowed the "untrained" officers to use "this kind of force," "violating my freedom of speech." *Id*.

After the beating, Plaintiff claims it took approximately three hours and fifteen minutes before he received medical care for his injuries. Plaintiff alleges that he was examined in a dark room with only a flashlight, and although he advised "Nurse Evans" regarding the injury to his testicles, the nurse did not acknowledge him, write anything down about it, or do anything. *Complaint*, 5. According to Plaintiff, he tried to see a doctor about the injury to his testicles but he was never given any health care forms. On November 4, 2008, he finally received a form and filled it out. Plaintiff does not indicate whether he eventually received further medical care related to the injuries complained of herein.

Plaintiff alleges that he exhausted his administrative remedies by seeking relief with two CDC 602 Inmate Appeals to the third level of review for the beating, the injury to his testicles, his freedom of speech, and not having an independent exam. Plaintiff states that one appeal was denied and the other was screened out. Plaintiff further alleges that "nothing was done about medical care

---

[1] Because this case comes before the Court on a motion to dismiss, the Court must accept as true all material allegations in the complaint and must also construe the complaint, and all reasonable inferences drawn therefrom, in the light most favorable to Plaintiff. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

602 appeal." *Complaint*, 6. Defendants do not challenge Plaintiff's assertion that he properly exhausted his claims prior to filing the instant lawsuit.

Based on the above allegations, Plaintiff asserts three causes of action: (1) violation by all Defendants of his Eighth Amendment right to be free from cruel and unusual punishment due to the officer defendants' use of excessive force and the supervisor defendants' failure to train the officer defendants; (2) violation of his First Amendment right to freedom of speech by all Defendants; and (3) violation by the officer defendants of his Eighth Amendment rights due to the inadequate medical care he received for his alleged injuries.

## LEGAL STANDARDS

*1.     Federal Rule of Civil Procedure 12(b)(6)*

Defendants argue that they are entitled to dismissal under Federal Rule of Civil Procedure 12(b)(6) on the ground that Plaintiff's complaint fails to state a claim upon which relief can be granted under Section 1983. When ruling on a motion to dismiss under Rule 12(b)(6), "[a]ll allegations and reasonable inferences are taken as true, and the allegations are construed in the light most favorable to the non-moving party." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). However, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Id.* "Dismissal is proper under Rule 12(b)(6) if it appears beyond doubt that the non-movant can prove no set of facts to support its claims." *Id.*

To survive a motion to dismiss for failure to state a claim, a complaint must meet the pleading standard set by Federal Rule of Civil Procedure 8. Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's

1 liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.*
2 (quoting *Twombly*, 550 U.S. at 557). Further, although a court must accept as true all factual
3 allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.
4 *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory
5 statements, do not suffice." *Id.* (quoting *Twombly*, 550 U.S. at 555).

       2.    *Standards Applicable to Pro Se Litigants*

Where a plaintiff appears in propria persona in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). In giving liberal interpretation to a *pro se* civil rights complaint, courts may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.*; *see also Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under § 1983). "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." *Jones*, 733 F.2d at 649 (internal quotation omitted).

The court must give a *pro se* litigant leave to amend his complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted) (citing *Noll v. Carlson*, 809 F.2d 1446, 1447 (9th Cir. 1987)). Thus, before a *pro se* civil rights complaint may be dismissed, the court must provide the plaintiff with a statement of the complaint's deficiencies. *Karim-Panahi*, 839 F.2d at 623-24. But where amendment of a *pro se* litigant's complaint would be futile, denial of leave to amend is appropriate. *See James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000).

**DISCUSSION**

       1.    Eleventh Amendment Immunity

Plaintiff has sued all Defendants in both their official and individual capacities, and is

seeking compensatory damages in an unknown amount and punitive damages in the amount of $6 million. *Complaint*, 2-3; 7. Defendants contend they are immune to suit for damages under the Eleventh Amendment to the extent Plaintiff is suing them in their official capacity. Under the Eleventh Amendment, states are immune from suits for damages brought in federal court. *Henry v. County of Shasta*, 132 F.3d 512, 517 (9th Cir. 1997). This protection extends to state officials acting in their official capacity. *Regents of the University of California v. Doe*, 519 U.S. 425, 429 (1997).[2] Defendants correctly argue that as state officials they are immune from suit in their official capacity.

Accordingly, the Court **GRANTS IN PART** Defendants' motion to dismiss Plaintiff's claims against all Defendants in their *official* capacities without further leave to amend, as further amendment would be futile. *See James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000); *see also Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (holding that a *pro se* litigant must be given leave to amend his complaint unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment).

  *2 Supervisor Defendants*

    *a) Respondeat Superior*

Plaintiff's allegations against the supervisor defendants are sparse, however he clearly asserts that Defendants Neotti and Cate violated his Eighth and First Amendments because they failed to properly train the officer defendants. To the extent Plaintiff alleges they committed constitutional violations on the basis of their supervisory roles alone, Defendants Neotti and Cate contend the claims against them must be dismissed.

Liability for a civil rights violation under Section 1983 may not be based on a theory of respondeat superior. *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 693 (1978). "Liability under [§] 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Therefore, "a supervisory official, such as a warden, may be liable under Section 1983 only if he was personally involved in the

---

[2] While the Eleventh Amendment bars a prisoner's section 1983 claims against state actors sued in their official capacities, *Will v. Michigan*, 491 U.S. 58, 66 (1989), it does not bar damage actions against state officials in their personal or individual capacities. *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Pena v. Gardner*, 976 F.2d 469, 472-73 (9th Cir. 1992).

1  constitutional deprivation, or if there was a sufficient causal connection between the supervisor's
2  wrongful conduct and the constitutional violation." *Henry v. Sanchez*, 923 F. Supp. 1266, 1272
3  (C.D. Cal. 1996). For there to be a sufficient causal connection, the official must have known of a
4  constitutional violation; it is not enough to claim that an official should have known of a
5  constitutional deprivation because of a complaint brought through the prison appeals system. *Barry
6  v. Ratelle*, 985 F. Supp. 1235, 1239 (S.D. Cal. 1997).

7  Here, Plaintiff alleges that the supervisor defendants failed to adequately train their
8  "subordinates." *Complaint*, 2. Specifically, with respect to his Eighth Amendment excessive force
9  claim, Plaintiff alleges that "the warden Mr. Neotti and Director of Corr. Mathew [sic] Cate let his
10  untrained C.O.s do this kind of force." *Id.* at 3. As to his First Amendment claim, Plaintiff states
11  the supervisor defendants "let untrained C.O.s do this kind of force violating my freedom of
12  speech." *Id.* at 4. Plaintiff fails to go beyond these broad statements, however, and does not allege
13  the supervisor defendants were personally involved in the October 15, 2008 events in the prison
14  yard, and it is those events that are the crux of Plaintiff's allegations of constitutional violations.
15  Further, Plaintiff fails to allege any causal connection between the supervisor defendants and the
16  alleged constitutional violations. As such, Plaintiff's constitutional claims against Defendants
17  Neotti and Cate are based on a theory of respondeat superior, which does not create liability under
18  Section 1983. *Monell*, 436 U.S. at 693.

19  Accordingly, the Court **GRANTS IN PART** Defendants' motion to dismiss Plaintiff's
20  constitutional claims against the supervisor defendants without further leave to amend, as further
21  amendment would be futile. *See James v. Giles*, 221 F.3d 1074, 1077 (9th Cir.2000).[3]

22      *b)    Qualified Immunity*

23  Because Plaintiff fails to allege cognizable claims against them under the Eighth and First
24  Amendments, the supervisor defendants also contend they are protected by qualified immunity from

---

[3] Although the Court appreciates that leave to amend should be granted if it appears at all possible that Plaintiff can cure the deficiencies identified by the allegation of other facts, and should be granted more liberally to *pro se* plaintiffs, *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir. 2004), Plaintiff alleges liability here against the supervisor defendants solely based on their roles as supervisors, which is a claim based on respondeat superior and not viable under § 1983. Plaintiff cannot cure this legal deficiency, and therefore amendment would be futile.

suit. In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court set forth a two-step sequence for resolving government officials' qualified immunity claims.[4] First, the Supreme Court directed that a court must decide whether the facts alleged by the plaintiff sufficiently state a violation of a constitutional right. *Id*. at 201. Second, if the plaintiff crosses this threshold, the court must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.* Here, as noted above, Plaintiff's complaint does not establish claims against the supervisor defendants under the Eighth and First Amendments. Therefore, Defendants Neotti and Cate are immune from suit on these issues.

Accordingly, the Court **GRANTS IN PART** Defendants' motion to dismiss Plaintiff's constitutional claims against the supervisor defendants on the additional basis of qualified immunity without further leave to amend, as further amendment would be futile. *See James v. Giles*, 221 F.3d 1074, 1077 (9th Cir.2000).

    3.    *Officer Defendants*

        a.    *Eighth Amendment Excessive Force Claim*

Plaintiff claims that the officer defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by putting him "on the wall,"and beating him. Specifically, Plaintiff claims that C.O. Vanderweide hit him in the testicles three times while the other officer defendants watched and allowed it to happen. Plaintiff also alleges that all the officer defendants beat him with their batons, forcing him to the ground. While on the ground, Plaintiff claims that C.O.s Marshall and Montoya hit him with their batons, while the other officer defendants hit him with their fists. Simply phrased, Plaintiff claims the officer defendants used excessive force against him.

"When prison officials use excessive force against prisoners, they violate the inmates' Eighth Amendment right to be free from cruel and unusual punishment." *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir.2002). Plaintiff has alleged sufficient facts to state an excessive force claim against the

---

[4] Although it should be noted that recently, in *Pearson v. Callahan*, __U.S.__ , 129 S.Ct. 808, 818 (2009), the court held that the two-step sequence for analyzing the defense of qualified immunity as set forth in *Saucier*, "should no longer be regarded as mandatory."

officer defendants. Defendants do not move to dismiss this claim.[5] Plaintiff may proceed with his excessive force claim against the officer defendants.

Accordingly, to the extent Defendants move to dismiss Plaintiff's complaint in its entirety, the Court **DENIES IN PART** the motion.

### b. *Eighth Amendment Deliberate Indifference Claim*

Styled as a violation of his right to medical care, Plaintiff alleges the officer defendants were deliberately indifferent to his medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Specifically, Plaintiff alleges he was denied medical treatment for a period of approximately three hours and fifteen minutes after he received the beating in the prison yard. *Complaint*, 5. Plaintiff further alleges that the care he eventually received was inadequate. Plaintiff claims he was examined by an individual to whom he refers as "Nurse Evans," in a "cage" in a "dark room" with "just a flashlight." *Id*. Plaintiff essentially alleges that this individual did not attend to his injuries in a satisfactory manner, particularly the alleged injury to his testicles, and that his request to see a doctor fell on deaf ears. Defendants argue that Plaintiff's claim for deliberate indifference fails to state a claim upon which relief can be granted.

"[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). "A determination of 'deliberate indifference' involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992). First, "[a] 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104). Second, to establish deliberate indifference, a defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need. *McGuckin*, 974 F.2d at 1060. Deliberate indifference to medical needs occurs when prison officials "'deny, delay, or intentionally interfere with medical treatment.'" *Hunt*

---

[5] Defendants move to dismiss all claims against the supervisor defendants on the grounds stated previously, and challenge Plaintiff's Eighth Amendment deliberate indifference claim and First Amendment claim against the officer defendants on their merits. However, Defendants make no reference in their moving papers to Plaintiff's excessive force claim, despite the claim being clearly stated in Plaintiff's complaint.

1  *v. Dental Dep't*, 865 F.2d 198, 201 (9th Cir. 1989) (quoting *Hutchinson v. U.S.*, 838 F.2d 390, 394
2  (9th Cir. 1984)).  "The requirement of deliberate indifference is less stringent in cases involving a
3  prisoner's medical need than in other cases involving harm to incarcerated individuals because '[t]he
4  State's responsibility to provide inmates with medical care ordinarily does not conflict with
5  competing administrative concerns.'"  *McGuckin*, 974 F.2d at 1060.  Nonetheless, the indifference
6  to medical needs must be substantial; inadequate treatment due to malpractice, or even negligence,
7  does not amount to a constitutional violation.  *Estelle*, 429 U.S. at 106.

8      Plaintiff fails to plead sufficient facts to state a plausible Eighth Amendment claim for
9  deliberate indifference to his medical needs.  First, Plaintiff's allegations do not demonstrate that his
10 actual medical condition was serious.  Although Plaintiff alleges that he suffered injury to his
11 testicles in particular, he does not describe his physical condition in any detail or set forth any facts
12 regarding other injuries sustained from the beating.  As such, Plaintiff has not plead facts sufficient
13 to show the failure to treat his condition "could result in further significant injury or the
14 'unnecessary and wanton infliction of pain.'"  *McGuckin*, 974 F.2d at 1059.  Furthermore, Plaintiff
15 fails to plead sufficient facts demonstrating the officer defendants had culpable states of mind.

16     To the extent that Plaintiff alleges the three plus hour delay in receiving medical care
17 violated his constitutional rights, Plaintiff fails to plead specific facts showing the officer defendants
18 had actual knowledge of his injuries or that they intentionally delayed his access to necessary
19 medical attention.  And while Plaintiff complains of not receiving follow up care from a physician,
20 the Court notes that differences in judgment between an inmate and prison medical personnel
21 regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate
22 indifference claim.  *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).  In sum, Plaintiff's vague
23 allegations about the delay and denial of treatment fail to show deliberate indifference and are
24 simply "unadorned, the defendant-unlawfully-harmed-me" accusations that fail under federal
25 pleading standards.  *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

26     Accordingly, the Court **GRANTS IN PART** Defendants' motion and dismisses Plaintiff's
27 Eighth Amendment deliberate indifference claim against the officer defendants.  Plaintiff has not
28 been advised previously regarding the deficiencies in his complaint with respect to this claim.  It is

possible that Plaintiff could add sufficient facts to his complaint to state a plausible Eighth Amendment deliberate indifference to medical needs claim.  Therefore, the Court **GRANTS** Plaintiff leave to amend his complaint with respect to this claim.

      *c.*  *First Amendment Free Speech Claim*

Plaintiff asserts that the October 15, 2008 incident described above violated his First Amendment right to free speech.  Plaintiff maintains that he called C.O. Marshall a "name," and that his name-calling is protected speech.  Because he was punished as a result of that speech, Plaintiff argues that the officer defendants violated his First Amendment rights.

In order to state a cognizable First Amendment free speech claim, Plaintiff must plead that his speech was constitutionally protected, that the officer defendants' actions would chill an ordinary person from continuing in that activity, and that the officer defendants' actions were motivated by his constitutionally protected speech.  *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1300-1301 (9th Cir.1999).  While the First Amendment protects a wide range of activity in the prison context, protests and complaints that involve a direct confrontation with prison officials, such as Plaintiff's name-calling with C.O. Marshall, enjoy limited constitutional protection because such behavior may present the danger of a disturbance.  *See, e.g., Franklin v. State of Oregon*, 563 F.Supp. 1310, 1326 (D.Or. 1983) (First Amendment does not extend to "use of expletives" directed toward a guard), aff'd in part and rev'd in part, 795 F.2d 1221 (9th Cir.1984). The California Code of Regulations acknowledges this concern and prohibits such behavior:

> Inmates, parolees and employees will not openly display disrespect or contempt for others in any manner intended to or reasonably likely to disrupt orderly operations within the institutions or to incite or provoke violence.

Cal.Code Regs., tit 15, § 3004(b).  Name-calling does not constitute constitutionally protected speech and therefore Plaintiff fails to state a First Amendment free speech claim.

Alternatively, Defendants construe Plaintiff's claim as a First Amendment claim for retaliation.  Plaintiff asserts that the officer defendants beat him in response to (i.e., in retaliation for) Plaintiff calling C.O. Marshall a name.  Allegations of retaliation against a prisoner's First Amendment right to freedom of speech may support a section 1983 claim.  *See Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir.1985).

"Within the prison context, a viable First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-568 (9th Cir. 2005). However, to properly state a First Amendment retaliation claim, Plaintiff must plead facts showing that he engaged in protected speech. As noted above, Plaintiff's only alleged "protected" statement is whatever name it is that he called C.O. Marshall, and this does not amount to protected speech. Furthermore, Plaintiff does not allege that the officer defendants' conduct chilled the exercise of his constitutional rights. Finally, he fails to allege that the officer defendants' conduct did not reasonably advance a legitimate correctional goal. Accordingly, even construed liberally, Plaintiff's complaint fails to state a plausible constitutional claim for retaliation.

Because Plaintiff does not sufficiently allege a First Amendment free speech or retaliation claim, the Court **GRANTS IN PART** Defendants' motion and dismisses this claim against the officer defendants. Plaintiff speech is not constitutionally protected. Accordingly, any amendment would be futile and dismissal of this claims is with prejudice. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 339 (9th Cir. 1996) (leave to amend should not be granted where to do so would be futile).

### CONCLUSION

Based on the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss. Plaintiff's Eighth Amendment excessive force claim shall proceed against the officer defendants. In addition, the Court **GRANTS** Plaintiff leave to amend his complaint, however, <u>only with respect to his Eighth Amendment deliberate indifference to medical needs claim against the officer defendants</u>.

**IT IS SO ORDERED**.

DATED: August 23, 2010

Hon. Michael M. Anello
United States District Judge