1
2
3
4
5
6
7
8              **UNITED STATES DISTRICT COURT**
9              **SOUTHERN DISTRICT OF CALIFORNIA**
10
11   BRIAN ALLEN BASS,                          CASE NO. 09cv1850-MMA(CAB)

                             Plaintiff,
12
                     vs.                       **ORDER GRANTING DEFENDANTS'**
13                                             **MOTION FOR SUMMARY**
                                               **JUDGMENT**
14
     GEORGE NEOTTI, Warden, et al.,            [Doc. No. 52]
15
                             Defendant.
16

17         Plaintiff Brian Allen Bass, a California state prisoner proceeding *pro se*, brings this action

18   pursuant to 42 U.S.C. § 1983, alleging violation of his Eighth Amendment right to be free from cruel

19   and unusual punishment.  The matter is before the Court on Defendants' motion for summary

20   judgment.  [Doc. No. 52.]  Because Plaintiff is incarcerated and proceeding without counsel, the

21   Court notified him of the requirements for opposing summary judgment pursuant to *Klingele v.*

22   *Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en

23   banc).  [Doc. No. 62.]  Plaintiff filed an opposition to the motion, to which Defendants replied.

24   [Doc. Nos. 67 & 68.]  For the following reasons, the Court **GRANTS** Defendants' motion.

25                                  <u>**SUMMARY OF THE CASE**</u>

26         In his complaint, Plaintiff sets forth three causes of action: (1) violation of his Eighth

27   Amendment right to be free from cruel and unusual punishment due to the officer defendants' use of

28   excessive force and the supervisor defendants' failure to train the officer defendants; (2) violation of

1  his First Amendment right to freedom of speech; and (3) violation by the officer defendants of his

2  Eighth Amendment rights due to the inadequate medical care he received for his alleged injuries.

3  The Court previously dismissed Plaintiff's claims for damages against all defendants in their official

4  capacities based on their immunity from suit under the Eleventh Amendment.  The Court also

5  dismissed Plaintiff's claims against the supervisor defendants, his Eighth Amendment deliberate

6  indifference claim against the officer defendants, and his First Amendment freedom of speech claim

7  against the officer defendants.  The only claim that remains is Plaintiff's Eighth Amendment

8  excessive force claim against the officer defendants (hereafter referred to as "Defendants").

9                                              **STATEMENT OF FACTS**

10          This matter arises out of events which occurred while Plaintiff was incarcerated at R. J.

11  Donovan Correctional Facility, in San Diego County, California.  The following facts are not

12  reasonably in dispute unless otherwise indicated.[1]

13          On October 15, 2008, at approximately 2:30 p.m., Correctional Officer ("CO") Lakeisha

14  Marshall was monitoring the day room floor while general population inmates were allowed to take

15  showers.  After noticing Plaintiff wandering about the day room floor, CO Marshall ordered Plaintiff

16  to take a shower or return to his cell.  Plaintiff complied with the order to take a shower, after which

17  CO Marshall observed him once again wandering about the day room floor.  CO Marshall ordered

18  Plaintiff to return to his cell for lock-up.  Plaintiff responded by saying "wait a minute" and

19  proceeded in the direction of other cell doors (rather than his own).  CO Marshall followed Plaintiff

20  and once again verbally reprimanded him for not returning to his own cell.  Plaintiff turned around,

21  faced CO Marshall, told her she was acting "like a bitch," and dared her to spray him with mace.

22  Plaintiff then returned to his own cell.

23          CO Marshall notified Facility Program Sergeant Vasquez of her encounter with Plaintiff.

24  Sergeant Vasquez and CO Theifes, along with several yard staff members and CO Marshall, went to

25  Plaintiff's cell and ordered him to step out of the cell and place his hands on the wall so that he

26

27
          [1] Facts are taken from Defendants' Statement of Undisputed Facts filed in support of their

28  motion for summary judgment, which includes citations to supporting evidence, and Plaintiff's
Statement of Facts contained in his opposition brief.

1  could be searched.  CO Vanderweide kicked Plaintiff's legs apart and conducted a clothed body

2  search of Plaintiff.

3          According to Plaintiff, as recited in his deposition testimony and his opposition brief, CO

4  Vandeweide "talked dirty" to him during the body search and hit his testicles three times, at which

5  point Plaintiff removed one of his hands from the wall to cover his groin area.  CO Vandeweide then

6  took Plaintiff down and he and the other staff members beat Plaintiff with their fists and batons.

7  According to Defendants, during the clothed body search, Plaintiff stepped away from the wall on

8  his left foot, spun around, and swung at CO Vandeweide with his right hand, striking CO

9  Vandeweide in the left eye with enough force to cause CO Vandeweide to lose his balance and

10 stumble backwards.

11         Plaintiff then punched CO Vandeweide in the nose, and CO Vandeweide responded by

12 punching Plaintiff in the face.  Plaintiff then lunged at CO Vandeweide.  Sergeant Vasquez ordered

13 Plaintiff to get down on the ground, and Plaintiff ignored him, continuing the assault on CO

14 Vandeweide.  Sergeant Vasquez struck Plaintiff on his back repeatedly and CO McCurty grabbed

15 Plaintiff by the back of his shirt while Plaintiff continued to throw punches at CO Vandeweide.  CO

16 Vandeweide grabbed Plaintiff around his upper torso, and with the assistance of COs McCurty and

17 Thiefes and Sergeant Vasquez, took Plaintiff to the ground.

18         Plaintiff continued to resist despite being ordered to comply and lay on the ground.  CO

19 Montoya struck Plaintiff with his expandable baton on Plaintiff's buttocks twice.  While laying on

20 the ground, Plaintiff continued to struggle and engage in a physical altercation with CO

21 Vandeweide.  Plaintiff was kicking his legs while staff members attempted to place him in restraints.

22 CO Marshall struck Plaintiff with her expandable baton on his lower right leg.  CO McCurty pulled

23 Plaintiff's hands around and to the center of his back, and CO Nieves placed him in handcuffs.  CO

24 Marshall placed leg irons on Plaintiff.  Once Plaintiff was restrained, he was not struck, punched,

25 kicked, or otherwise physically assaulted by any of the staff members.  Plaintiff was then escorted

26 out of the building by COs Nieves and Robles, to be examined for injuries by a nurse.  Plaintiff

27 suffered bruises on his arms and legs.  His medical report indicated no injury to his groin area.  He

28 did not sustain any lasting injuries.

09cv1850

1                                           **LEGAL STANDARD**

2          Summary judgment is appropriate when there is no genuine dispute as to material facts and

3   the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Material facts are

4   those that may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

5   (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable

6   jury to return a verdict for the nonmoving party.  *Id.*  The Court may not weigh the evidence and

7   must view the evidence in the light most favorable to the nonmoving party.  *Id.* at 255.  The Court's

8   inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or

9   whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.

10         A party seeking summary judgment bears the initial burden of informing the Court of the

11  basis for its motion, and of identifying those portions of the pleadings and discovery responses that

12  "demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S.

13  317, 323 (1986).  Where the moving party will have the burden of proof at trial, it must

14  "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving

15  party."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  However, on an issue

16  for which its opponents will have the burden of proof at trial, the moving party can prevail merely

17  by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case."

18  *Celotex*, 477 U.S. at 325.  If the moving party meets its initial burden, the opposing party must "set

19  out specific facts showing a genuine issue for trial" to defeat the motion.  Fed. R. Civ. P. 56(e)(2);

20                                             **DISCUSSION**

21         Plaintiff contends that Defendants used excessive force in violation of the Eighth

22  Amendment.  The "core judicial inquiry," when a prisoner alleges the excessive use of force under

23  the Eighth Amendment, is "not whether a certain quantum of injury was sustained," but rather

24  "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and

25  sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. at 1, 7 (1992); *see also Whitley v.*

26  *Albers*, 475 U.S. 312, 319-321 (1986).  "When prison officials maliciously and sadistically use force

27  to cause harm," the Supreme Court has recognized, "contemporary standards of decency always are

28  violated . . . whether or not significant injury is evident.  Otherwise, the Eighth Amendment would

1  permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some

2  arbitrary quantity of injury." *Hudson*, 503 U.S. at 9; *see also Wilkins v. Gaddy*, 130 S. Ct. 1175,

3  1178-79, 175 L. Ed. 2d 995 (2010) ("An inmate who is gratuitously beaten by guards does not lose

4  his ability to pursue an excessive force claim merely because he has the good fortune to escape

5  without serious injury."). Thus, "[i]n determining whether the use of force was wanton and

6  unnecessary," the court must "evaluate the need for application of force, the relationship between

7  that need and the amount of force used, the threat reasonably perceived by the responsible officials,

8  and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7 (internal

9  quotation marks and citations omitted).

10         With respect to the injury sustained, "[n]ot every push or shove, even if it may later seem

11  unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Hudson*,

12  503 U.S. at 9, citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). "After incarceration,

13  only the 'unnecessary and wanton infliction of pain' . . . constitutes cruel and unusual punishment

14  forbidden by the Eighth Amendment." *Whitley*, 475 U.S. at 319 (internal quotations omitted).

15         The evidence before the Court, construed in the light most favorable to Plaintiff, fails to raise

16  a genuine issue of material fact with respect to his Eighth Amendment excessive force claim.

17  Plaintiff does not dispute the facts surrounding the precipitating event – that although he ultimately

18  obeyed CO Marshall's orders to shower and return to his cell, he did not do so immediately and was

19  verbally abusive and disrespectful to CO Marshall while in close proximity to her. In this context,

20  CO Marshall reasonably perceived Plaintiff's actions as threatening, and it was not unreasonable to

21  advise her supervisor and fellow correctional officers of the events. Nor was it unreasonable for CO

22  Vandeweide to conduct a clothed body search of Plaintiff in order to assess whether he was armed

23  with weapons or contraband, given that CO Marshall had observed him wandering about the day

24  room floor, heading towards other inmates' cells, particularly in light of his brazen attitude and

25  refusal to obey CO Marshall's verbal commands.

26         That Defendants arrived at Plaintiff's cell perhaps as much as twenty minutes after the

27  encounter with CO Marshall is of no moment. Plaintiff argues that the delay in Defendants'

28  response demonstrates that Defendants did not believe him to be an imminent threat, or they would

1  have responded more quickly.  Because they took their time to gather and approach Plaintiff at his

2  cell, Plaintiff argues that Defendants must have intended him harm.  However, this assertion

3  overlooks a basic fact of incarceration – a prisoner does not have to present an imminent threat to

4  other prisoners or officers in order to justify a clothed body search.  Preserving institutional order,

5  discipline, and security are legitimate penological goals.  *Witherow v. Paff*, 52 F.3d 264, 265 (9th

6  Cir. 1995).  The safety and security of a penal institution requires that inmates obey rules and

7  regulations and respect authority.  *Cutter v. Wilkinson*, 544 U.S. 709, 722-23 (2005).  When they

8  choose not to, they may face a variety of consequences, including administrative segregation, loss of

9  privileges, cell searches, and both clothed and unclothed body searches.  Plaintiff concedes he

10  challenged CO Marshall and called her a "bitch," after refusing to immediately obey her direct

11  orders to shower and return to his cell.  The subsequent clothed body search was not unreasonable

12  and served the legitimate penological purpose of maintaining prison security.  *Turner v. Safley*, 482

13  U.S. 78, 91 (1987).

14       Plaintiff attempts to create a genuine issue of material fact by asserting that CO Vandeweide

15  initiated the physical altercation by punching Plaintiff in the groin area three times during the

16  clothed body search.  Plaintiff argues that he justifiably disobeyed the order to keep both hands on

17  the wall, and removed one of his hands from the wall, in order to protect himself from any further

18  harm to his groin area.  Given these facts, he contends that the resulting use of force by Defendants

19  was an  unconstitutionally excessive response.  However, the great weight of the evidence indicates

20  that Plaintiff resisted being restrained and failed to obey Defendants' commands to lay on the

21  ground.  Although Plaintiff asserted at his deposition that he did not punch CO Vandeweide or kick

22  his legs or otherwise resist, Defendants submit multiple declarations from officers present at the

23  scene that uniformly contradict Plaintiff's self-serving assertion.  Defendants also offer medical

24  records which demonstrate that CO Vandeweide suffered a black eye and Sergeant Vasquez suffered

25  pain in his left knee, injuries consistent with being punched and kicked.  Thus, even viewing the

26  events of October 15, 2008 in the light most favorable to Plaintiff, Defendants were justified in

27  using the force necessary to defend against Plaintiff's physical aggression, and to restrain Plaintiff

28  and restore order.

09cv1850

1    Defendants present ample evidence to support their contention that the force applied to

2    Plaintiff was only done so "in a good faith effort" to restore discipline, and not "maliciously or

3    sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. at 1, 7 (1992).  Plaintiff offers no

4    evidence other than his own testimony to support his assertion that Defendants planned to harm him

5    or incited the physical altercation.  Plaintiff admits that Defendants did not use any weapons or

6    chemical spray in the course of regaining control over him, and that as soon as he was put in

7    restraints Defendants ceased using their batons and did not otherwise assault him.  The undisputed

8    facts also substantiate that Plaintiff required no further medical treatment after his examination by

9    the nurse.

10    In order for an Eighth Amendment excessive force case to go to the jury, the evidence must

11    go "beyond a mere dispute over the reasonableness of a particular use of force or the existence of

12    arguably superior alternatives" to support "a reliable inference of wantonness in the infliction of

13    pain." *Whitley*, *supra*, 475 U.S. at 322.  Here, a jury could not reasonably conclude that Defendants'

14    application of force was unnecessarily excessive under the circumstances and not undertaken in a

15    good faith effort to restore discipline or order.  Thus, summary judgment is appropriate.

16    *2.    Qualified Immunity*

17    Defendants argue, in the alternative, that summary judgment is warranted because they are

18    entitled to qualified immunity.  The defense of qualified immunity protects "government officials . .

19    . from liability for civil damages insofar as their conduct does not violate clearly established

20    statutory or constitutional rights of which a reasonable person would have known." *Harlow v.*

21    *Fitzgerald*, 457 U.S. 800, 818 (1982).  A court considering a claim of qualified immunity must

22    determine whether the plaintiff has alleged the deprivation of an actual constitutional right and

23    whether such a right was "clearly established." *Pearson v. Callahan*, 129 S. Ct. 808, 818, 172 L.

24    Ed. 2d 565 (2009) (overruling the sequence of the two-part test that required determination of a

25    deprivation first and then whether such right was clearly established, and holding that a court may

26    exercise its discretion in deciding which prong to address first, in light of the particular

27    circumstances of each case).  The relevant, dispositive inquiry in determining whether a right is

28    clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful

1  in the situation he confronted.  *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

2         Here, as discussed in detail above, the Court finds that Defendants' actions did not amount to

3  an Eighth Amendment violation.  However, even if a constitutional violation had occurred, it would

4  not have been clear to a reasonable officer in Defendants' position that their conduct violated the

5  constitutional prohibition against excessive force.  It is not disputed that, at the time of the events in

6  question, the malicious and sadistic use of force against prisoners was a violation of the Eighth

7  Amendment.  However, a reasonable officer could have believed that the amount of force used was

8  lawful in light of clearly established law.  *See Saucier*, 533 U.S. at 205, citing *Graham v. Connor*,

9  490 U.S. 386, 396 (1989)) (reasonableness of officer's belief as to appropriate level of force should

10  be judged from an on-scene perspective).  Therefore, even if a constitutional violation had occurred,

11  Defendants are entitled to qualified immunity with respect to Plaintiff's Eighth Amendment

12  excessive force claim.

13         *3.     Conclusion*

14         In sum, even viewing the evidence in the light most favorable to Plaintiff, the Court

15  concludes the undisputed evidence demonstrates that CO Marshall reasonably perceived Plaintiff's

16  behavior on the afternoon of the events in question as threatening; CO Vandeweide reasonably

17  perceived Plaintiff's unauthorized movements during the clothed body search as threatening; the

18  force used by Defendants to defend themselves, restrain Plaintiff, and restore order was not

19  excessive; and, Plaintiff sustained *de minimus* injury.  Accordingly, Defendants are entitled to

20  summary judgment in their favor, and Plaintiff's Eighth Amendment excessive force claim shall be

21  dismissed with prejudice.

22                                         CONCLUSION

23         Based on the foregoing, the Court **GRANTS** Defendants' motion for summary judgment.

24  This order disposes of Plaintiff's sole remaining claim.  Therefore, the Court instructs the Clerk to

25  enter judgment in favor of Defendants and terminate this case.

26         **IT IS SO ORDERED**.

27  DATED:  August 12, 2011

28

                                         Hon. Michael M. Anello
                                         United States District Judge

09cv1850